# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**DANNY MANZANARES,**

**Plaintiff,**

**v.**                                          **No.** _____

**SEAN HIGDON, an Officer of the
Albuquerque Police Department,
Individually,**

**Defendant.**

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

Plaintiff, Danny Manzanares, by and through his attorney, Dennis W. Montoya, Montoya Law, Inc., brings the instant complaint for violation of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for torts under the New Mexico Tort Claims Act, and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1343, with pendent jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1391.

2.      Venue is proper in this district, pursuant to 28 U.S.C. § 1357, as parties are all residents of New Mexico and all of the acts complained of occurred

in New Mexico. Plaintiff's causes of action arose in New Mexico.

## PARTIES

3.      Plaintiff Manzanares is a resident and citizen of the state of New Mexico.

4.      Plaintiff is of Hispanic ethnicity.

5.      Defendant Sean Higdon is an Officer of the Albuquerque Police Department.

6.      Defendant Higdon is an Anglo.

7.      Defendant, at all relevant times herein, was a law enforcement officer employed by the Albuquerque Police Department, a governmental agency operated by Defendant City of Albuquerque.

8.      At all times material to this complaint, Defendant Higdon was acting within the scope and course of his employment and under color of state law.

## FACTUAL BACKGROUND

9.      This is a civil action for monetary damages, arising from the fact that Defendant Higdon illegally arrested, handcuffed, and detained Plaintiff for six (6) hours or more.

10.     Plaintiff's federal constitutional claims arise under 42 U.S.C. § 1983, and under the Fourteenth and Fourth Amendments to the United States

Constitution.

11.     The Fourth Amendment to the United States Constitution reads as

follows:

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable
> searches and seizures, shall not be violated, and no
> warrants shall issue, but upon probable cause, supported
> by oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be
> seized.

12.     Specifically, on or about March 13, 2002 at approximately 4:00 a.m.,

Defendant Higdon arrived at Plaintiff's home, looking for Plaintiff's friend.

13.     Defendant Higdon accused Plaintiff's friend of sexually assaulting a

woman that Plaintiff's friend had been with earlier. Defendant demanded that

Plaintiff take him to his friend's home immediately. Although, Plaintiff had been

in the company of his friend, the alleged victim, and another woman at various

times during the preceding evening, the sexual assault was alleged to have taken

place when Plaintiff's friend and the woman were alone at Plaintiff's friend's

residence.

14.     Only a few minutes earlier, a friend or cousin of the alleged victim

had been at Plaintiff's home, brandishing a firearm and threatening to kill

Plaintiff's friend. The woman's friend claimed that this was the "third time" that

she had been raped and stated that he was going to take care of the problem, or

words to similar effect.

15.     Upon Defendant's arrival Plaintiff was still shaken up by this incident and was scared for his friend. During his "questioning" of Plaintiff, Defendant Higdon behaved in a violent, aggressive, and threatening manner and this further contributed to Plaintiff's fear for his friend's safety. Defendant was shouting, cursing, and threatening Plaintiff throughout the events described herein.

16.     Plaintiff did not reveal the location of his friend's house. Defendant Higdon stated that he was calling for the investigators. Plaintiff asked Defendant Higdon and his accomplice to exit his residence and wait outside for the investigators.

17.     Defendant Higdon erupted in a fit of rage. He threatened Plaintiff again and handcuffed Plaintiff. His decision to handcuff and, thereby, detain Plaintiff was made without any suspicion that Plaintiff had committed a crime or was a danger to anyone. Instead, Defendant handcuffed Plaintiff in order to punish him for attempting to exercise his Fourth Amendment rights. Defendant subsequently removed the handcuffs.

18.     Upon information and belief, one of the investigators called to the scene was Albuquerque Police Department Detective Monty Curtis.

19.     When the investigators arrived, Plaintiff agreed to ride with the police

to show them where his friend lived. Plaintiff's cooperation was conditioned upon the police officers' promise to return him to his own residence immediately after he identified his friend's residence. Plaintiff was placed in the back of a police car. Although he was informed that he was "not under arrest," Plaintiff was handcuffed a second time. Once again, Plaintiff was detained, in the back of a police car and in handcuffs, without any suspicion that he had committed any crime whatsoever. Said detention, including handcuffing Plaintiff rendered him lawfully under arrest despite Defendant's statements to the contrary. Defendant Higdon and the other Albuquerque Police Department Officers acted with the full knowledge that their behavior was illegal.

20.    When the police arrived at Plaintiff's friend's house they did not release Plaintiff. Instead, the police, including Defendant Higdon, left Plaintiff in the backseat of the police cruiser. The Albuquerque Police Department officers, including Defendant Higdon, had the volume of the radio up and the heater was blowing full blast.

21.    Plaintiff remained handcuffed and in the police cruiser for six (6) hours or more. The heat caused him to become sick twice. The loud music was painful. Plaintiff was never charged with any crime.

22.    When the police finally awoke Plaintiff's friend, they drug him from

his house and beat him. Throughout this time, Plaintiff sat, handcuffed in the back of the police car. Plaintiff was unable to leave and, as a result, could only watch as Defendant Higdon attacked his friend.

23.    Defendant Higdon and his Albuquerque Police Department accomplices finally returned Plaintiff to his home, threatening to arrest him on the drive home.

24.    No charges were pressed against Plaintiff **or** his friend. Upon information and belief, the basis for the entire incident, to wit; the woman's claim that she had been sexually assaulted was a complete fabrication and lacked any reasonable indicia of reliability.

25.    At no time did Defendant Higdon ever have reasonable suspicion, probable cause, or any articulable justification for detaining, handcuffing, and holding Plaintiff.

26.    Upon information and belief, no disciplinary steps were taken against Defendant Higdon as a result of either his unlawful detention of Plaintiff or the battery that Defendant committed against Plaintiff's friend.

## COUNT I: UNLAWFUL ARREST / DETENTION
## IN VIOLATION OF THE FOURTH AMENDMENT

27.     Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

28.     Defendant's actions during his prolonged warrantless, unjustified, and unreasonable arrest and detention of Plaintiff were such that, as a reasonable person, Plaintiff did not believe that he was free to leave.

29.     Defendant's actions were wonton, malicious, intentional, and grossly indifferent to the rights of Plaintiff.

30.     Upon information and belief, Defendant's actions were also motivated by racial animosity.

31.     Defendant's actions constituted unreasonable arrest and detention of Plaintiff, in violation of his Fourth Amendment rights.

## COUNT II: ILLEGALLY REMAINING IN PLAINTIFF'S HOME IN
## CONTRAVENTION TO THE FOURTH AMENDMENT

32.     Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

33.     The only lawful basis that Defendant Higdon had to enter Plaintiff's home was consent.

34.     There were no exigent circumstances or other lawful reason, beyond

consent, that allowed Defendant Higdon to enter, search, or remain in Plaintiff's home.

35.     At the time that Plaintiff requested that Defendant leave his residence, any prior consent was withdrawn.

36.     Defendant Higdon's refusal to leave Plaintiff's residence, upon Plaintiff's lawful request, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

37.     Defendant's actions, as demonstrated by his refusal to leave and his decision to handcuff Plaintiff in retaliation for Plaintiff's lawful request, were wonton, malicious, intentional, and grossly indifferent to the rights of Plaintiff.

38.     Upon information and belief, Defendant's actions were also motivated by racial animosity.

## COUNT III:  PUNITIVE DAMAGES

39.     Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

40.     The acts and omissions of Defendant Higdon herein were willful, wanton, intentional, malicious, and committed with the intent to cause harm, and said acts and omissions did in fact cause harm to Plaintiff.

41.     The acts and omissions  perpetrated against Plaintiff by Defendant

Higdon were motivated, in whole or in part, by illegal and prohibited invidious discrimination by virtue of the Plaintiff's Hispanic ethnicity.

42.    The award of punitive damages as against Defendant Higdon is justified and necessary in order to dissuade Defendant Higdon and others from behaving in the same or similar fashion in the future.

43.    No punitive damages are requested or sought against any municipalities or against Defendant Higdon in any of his official capacities.

**WHEREFORE**, Plaintiff prays that the Court accept his complaint and order appropriate preliminary hearings on all issues susceptible to such hearings. Plaintiff further prays that the Court, after all preliminary matters are resolved and full discovery has been had, order trial of the case on its merits. Plaintiff further prays that following trial, this Court award nominal, compensatory, and punitive damages against Defendant Higdon. Finally, Plaintiff prays that this Court award him the costs of this action and reasonable attorney's fees, and such other and further relief as may be deemed just and equitable under the circumstances as described above.

Respectfully submitted,
**MONTOYA LAW, INC**.

*(Electronically Filed)*

By: _____

Dennis W. Montoya
Attorney for Plaintiff
P.O. Box 15235
Rio Rancho, NM 87174-0235

(505) 246-8499
(505) 246-8599 (facsimile)