**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DANNY MANZANARES,**

                        **Plaintiff,**

**vs.**                                                          **CIV No. 05-0095 WPJ/LFG**

**SEAN HIGDON, an Officer of the
Albuquerque Police Department,
Individually,**

                        **Defendant.**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR INDIVIDUAL, SEQUESTERED VOIR DIRE
AND RELATED JURY SELECTION PROCEDURES**</u>

Plaintiff **DANNY MANZANARES**, by and through his counsel of record, Dennis W. Montoya, MONTOYA LAW, INC., hereby submits his Memorandum of Points and Authorities and Description of Proposed Procedures in support of his Motion for Individual, Sequestered Voir Dire and Related Jury Selection Procedures.

**INTRODUCTION**

By this motion, Plaintiff proposes various jury selection procedures intended to enable the parties and the court to effectively elicit and identify potential juror bias. The proposed procedures have been utilized in a number of courts with great success and are designed to be time efficient both for the Court and the individuals called for jury duty. In a case such as this, in which numerous sensitive issues exist that are likely to trigger bias, the procedures are essential to assure that Plaintiff receive a fair trial.

In outline form, the requested procedures (which, along with the reasons underlying the requests, will be explained more fully below) are as follows:

1.     An opening statement by the Court emphasizing candor in juror responses to voir dire;

2.     A written, case-specific juror questionnaire to be filled out upon arrival of the panel prior to the commencement of voir dire;

3.     Individual, sequestered voir dire; and

4.     Use of open-ended and follow-up questions in voir dire.

The core of Plaintiff's proposal is a procedure whereby jurors are questioned individually in a setting in which they will not be influenced by attitudes of other jurors, and in which they will feel free to speak openly about the issues of this case. In addition, such a procedure, if properly implemented, will avoid the repeated delays and accompanying frustration experienced by the Court and potential jurors alike during an extended voir dire.

Plaintiff proposes that the prospective jurors be divided into 2 to 3 groups of approximately 10 jurors each and be given the case-specific juror questionnaire to complete in advance of being screened for hardship excusal. Each group will be briefly screened for hardship. After the hardship screening the groups should undergo voir dire touching on the sensitive issues and attitudes involved in this case which prospective jurors may harbor pre-existing bias or prejudice. This portion of the voir dire should be conducted individually in private. This could be done in chambers or the jury room in order to guarantee a more informal and open atmosphere. Throughout, counsel should be permitted to utilize open-ended rather than "yes"-"no" or conclusory questions.

As the following discussion indicates, the proposed procedures expedite the jury selection process in part by preventing the bias of some jurors "tainting" others and by alleviating the juror frustration that occurs when all jurors are forced to sit through the entire voir dire process.

## ARGUMENT

### I. THE POTENTIAL FOR JUROR BIAS IN THIS CASE THREATENS TO UNDERMINE PLAINTIFF'S RIGHT TO A FAIR AND IMPARTIAL JURY

Both lawyers and social scientists have recognized the degree to which potential jurors enter the courtroom with biases that can infect and distort the jury's deliberative process. The difficulty of obtaining a fair and impartial jury is further compounded by the highly volatile specific issues in this case namely:

1. The unlawful acts alleged against Plaintiff prior to the alleged civil rights violation;

2. The position of authority of Defendant held at the alleged civil rights violation and the deference afforded to that position (both traditionally and as a result of the September 11th Attacks and the aftermath thereof); and

3. Recent high-profile murders of law enforcement personnel.

The issues and juror attitudes described herein are known to exist in throughout the U.S. and there is the possibility that it will affect Plaintiff's ability to obtain a fair and impartial jury, therefore, "the trial court must take [them] into account and govern the voir dire accordingly" See United States v. Robinson, 475 F.2d 376, 380-81(D.C. Cir. 1977). It is well established that "a biased juror may be unwilling to confirm that bias openly." People v. Williams, 29 Cal.3d 392, 403, (1981) (quoting People v. Crowe, 8 Cal.3d 815,831, n.31(1973)). Although the Court must "presume that a potential juror is responding in good faith when he asserts broadly that he can judge the case impartially [citation omitted], further interrogation may reveal bias of which he is unaware or which, because of his impaired objectivity, he unreasonably believes he can

overcome. <u>People v. Williams</u>, 29 Cal.3d at 402; also <u>Irvin v. Dowd</u>, (1961) 366 U.S. 17, 728;

<u>Silverthorne v. U.S.</u>, 405 F.2d 627, 638, (9th Cir. 1968) *cert. denied*, (1971) 400 U.S. 1022.) In

short, where, as here, a litigant's right to a fair and impartial jury is threatened by potential juror

bias, courts have consistently approved such voir dire as may be required to eliminate danger of

this bias.


## II. INDIVIDUAL SEQUESTERED VOIR DIRE IS ESSENTIAL IN ORDER TO FULLY IDENTIFY AND ELIMINATE JUROR PREJUDICE

### A. Direct, Sequestered Voir Dire has Numerous Advantages

The voir dire procedures Plaintiff proposes have several advantages over alternative

means of jury selection. First, the use of case-specific juror questionnaires combined with

individualized, sequestered questioning elicits the maximum information by eliminating features

of the voir dire which cause jurors to withhold information from the questioners. Second,

although these procedures are more painstaking than other methods of jury selection, they are

more efficient and less time-consuming in the long run. Third, individual voir dire permits

counsel for both parties to exercise challenges in a more intelligent manner than would be

otherwise possible.


### B. Individual, Sequestered Voir Dire Maximizes the Likelihood That Potential Jurors Will Give Honest Unbiased Responses

It is well known that virtually every aspect of group voir dire prevents jurors from giving

frank and open responses to the questions asked. Voir dire is essentially an interview situation

and the quality of information obtained is controlled by the conditions under which the interview

is conducted. In the case of voir dire conducted in the courtroom in the presence of a large group,

there are a variety of factors which impede the honest expression of opinion.

First, the courtroom is an automatically alien place for most prospective jurors, who are often unaccustomed and uncomfortable with speaking in front of large groups as they must do during the voir dire process. Jurors are fully aware that they will be included or excluded from the jury based upon their answers to the questions asked. Such a setting is likely to inhibit even the most conscientious jurors from responding frankly and openly.

Second, juror responses during voir dire are significantly influenced by what the juror believes the trial judge expects and wishes to hear. People v. Williams, 29 Cal.3d at 403. Psychological studies indicate that subjects avoid contradicting or displeasing an interviewer who is perceived as having a higher social status than the subject. In the courtroom, the judge is the most highly respected authority figure and consequently, jurors attempt to give responses that they believe will garner the judge's approval. Even during attorney-conducted voir dire jurors can, by careful observation, determine which answers seem to be acceptable to the judge and which will lead the judge to rehabilitate the juror or grant a challenge for cause. In short, large group voir dire permits prospective jurors the opportunity to discern relevant judicial attitudes directly or indirectly and to tailor their responses accordingly.

Third, the expressed attitudes of prospective jurors are affected by what they learn about the beliefs of other jurors. It is well documented that many jurors will attempt to respond during voir dire in a socially appropriate manner instead of simply speaking truthfully. This tendency is reinforced by the unfamiliar and highly formal atmosphere that a courtroom presents to most prospective jurors. Under such conditions of unfamiliarity and uncertainty, the tendency to conform as closely as possible to the behavior of others is strongest. Consequently, the effect of successive voir dire of individuals in the presence of a large group is simply to taint the attitudes

of later questioned jurors by permitting them to listen to answers given earlier. See <u>Irvin v. Dowd</u>, 336 U.S. at 728; <u>People v. Williams</u>, 29 Cal.3d at 403.

Fourth, voir dire frequently focuses on very personal issues about which jurors are hesitant to speak publicly. Subjected to public scrutiny in the presence of a large and unfamiliar audience, potential jurors tend to respond by minimizing the information disclosed.

Individual, sequestered voir dire eliminates each of these four drawbacks by providing for individual questioning in chambers and outside the presence of other jurors. Inevitably, the process of identifying and eliminating juror bias is more efficient and more effective. The procedure proposed by Plaintiff therefore significantly enhances the prospect that he will obtain a fair trial by an unbiased jury.

**B. Many Jurors Hold Subconscious Prejudices**

Prejudice can be defined as a state of mind that causes the bearer to react in a preconceived manner to a topic, and to close his mind to facts and opinions that do not fit a preconceived stereotype. Prejudice is also a feeling of hostility or superiority toward a person who looks, thinks or acts differently from oneself. Most prejudices are subconscious. People think they harbor no prejudices, yet are subject to many stereotypes. People think they are fair-minded and objective, yet feel uneasy or distrustful in the company of other races, nationalities or political viewpoints. Until a juror recognizes his or her own inner feelings or stereotypes he or she cannot try to combat them. These truisms have been demonstrated by innumerable scientific studies on which we plan to introduce expert testimony.

The concern over juror prejudice extends back to the foundation of the American legal system. Immediately following the American Revolution, the voir dire procedure in criminal cases was returned to the Colonial system to allow the attorneys to question the jurors for bias.

There is no question that voir dire was seen by American lawyers and judges as a way to secure a

fair trial. In the treason case of *United States v. Aaron Burr*, 25 Fed.Cas. 49 (1789-1880) (Case

No. 14, 692g,1807) Chief Justice Marshall discussed voir dire at length. His statements regarding

personal bias laid a basis for judicially protecting a rigorous voir dire:

> Why do personal prejudices constitute a just cause of challenge?
> Solely because the individual who is under their influence is
> presumed to have a bias on his mind which will prevent an
> impartial decision of the case, according to the testimony. He may
> declare that notwithstanding these prejudices he is determined to
> listen to the evidence, and be governed by it; but the law will not
> trust him.... He will listen with more favor to that testimony which
> confirms, than to that which would change his opinion.

The *Burr* case recognized the fact that every juror has some preconceived opinions.

During the trial the juror is bombarded with data, impressions, and conflicting stories. As Justice

Holmes observed,

> This is not a matter of polite presumptions; we must look facts in
> the face. Any judge who has sat with juries knows that in spite of
> forms they are extremely likely to be impregnated by the
> environing atmosphere.

Frank v. Mangum, 237 U.S. 309, 349 (1915)(dissenting).

This point was at the heart of the Seventh Circuit's decision in *United States v. Dellinger*,

472 F.2d 340 (7th Cir.1972). In that case feelings for and against the Vietnam war, as well as

differing concepts of patriotism, were involved. The Court held that the trial court would not

assume that persons with serious prejudices "could recognize such prejudices and lay them

aside." Similarly, Judge Gordon in *United States v. Cotton*, (No. 68 CR 113) (E.D.Wisc. 1969)

had the following insight into jurors' hidden prejudices: "(a)pproximately one out of every four

or five jurors called was, by his own evaluation, free of bias; but only [as to a] very few of those

persons could I fully agree [with] a juror's own assessment of his lack of bias." "Transcript

Dismissing Federal Indictment of Milwaukee 14," 28 National Lawyers Guild Practitioner, 101, 103 (1969). Judge Gordon cited *United States v. Largo*, 346 F.2d 253, for the proposition that "it is the Court's duty to ascertain each prospective juror's knowledge and attitude, rather than to accept his subjective assessment as to his own impartiality." Id., at 104.

Subconscious prejudice toward a litigant's race, class, beliefs, or previous failings influences the juror as the trial unfolds. It affects how one views the testimony, whom one believes, what facts one thinks are realistic, and what inferences are reasonable. Very few people consider themselves racists or reactionaries, yet their preconceptions cause them to expect certain behavior from certain people. In order for Plaintiff to receive a fair trial, it is vital that he be permitted to delve into potential juror prejudice.

**C. Directing Questions to the Jurors as a Group is Inconsistent with Due Process**

In some methods of voir dire, the court asks a question to the total panel or to all twelve prospective jurors. The court then waits for individual jurors to raise their hands and volunteer answers. Defendant suggests that this system violates our common-sense notions of peer group pressure that lead to jurors' reluctance to act differently from their fellow jurors. Although this is not to say that no juror will offer an answer, such a process will not produce the results of individual voir dire.

This proposition has been recognized by numerous courts. For example, in *People v. Barrett*, 207 Cal. 47 (1929), the court condemned the practice of collective examination of the jury panel and found prejudicial error. In *People v. Estorga*, 206 Cal. 81 (1928), the judge asked the panel as a group whether they held any prejudice and took their silence as a negative reply. Although the appellate court did not find this reversible error in the face of an admission of guilt, they did find error and sharply criticized such questioning. The First Circuit in *Patriarca v.*

*United States*, 402 F.2d 314 (1968) *cert. denied*, 393 U.S. 1022 (1969), also condemned such a practice:

> We feel bound to concede that such a single question posed to the panel en bloc with an absence of response, achieves little or nothing by way of identifying, weighing, or removing any prejudice from prior publicity.

Id., at 318.

In the case of *United States v. Oscar Bear Runner*, the Eighth Circuit squarely addressed the question of individual voir dire regarding racism and unequivocally stated:

> ...Although the use of general questions has been approved by this court, the better practice in a sensitive case is to, direct probing questions touching areas of possible prejudice to each individual juror, with the questions to be asked by trial judge or counsel. Individual questioning is particularly necessary when the overall circumstances and surroundings suggest the possibility of racial bias.

Bear Runner, at 912.

The Sixth Amendment guarantees the right to assistance of counsel. This guarantee has been interpreted to mean the "effective aid of counsel." The right of fair trial has been interpreted to include the right to jury challenge. Pointer v. United States, 151 U.S. 396, 469 (1894). The right of challenge includes the right to an effective voir dire. See Ham, at 530 (Marshall, J., concurring in part and dissenting in part). Reliance on group questioning is not effective to bring out prejudices. It is a rare juror who will raise his hand and volunteer his own racial prejudice. Group questioning seriously fails to bring out subtle prejudice because it does not confront the individual. Consequently, questions as to racism directed generally to the panel en bloc do not insure an effective voir dire and do not live up to the "essential demands of fairness" required by *Ham*.

9

**D. The Proposed Jury Selection Procedures Are More Efficient Than Other Methods.**

Individualized voir dire is not merely the most effective way of impaneling an unbiased jury. It is also the most efficient means for conducting voir dire. The procedures which Plaintiff has proposed have been used extensively throughout numerous jurisdictions. Individual, sequestered voir dire is more effective than large-group questioning and can be used to disclose the presence or absence of juror prejudice more swiftly. This is partly because jurors are untainted by exposure to the answers of other individuals, to the expression of views by others during questioning of prior jurors, and to the other pressures which cause them not to answer straightforwardly. In addition, both counsel and the court can proceed methodically, knowing that the same basic questions can be asked of each juror in a private setting without fear that the answers will have been influenced by prior questioning.

## III. USE OF OPEN-ENDED, NON-LEADING QUESTIONS IS ESSENTIAL IN ORDER TO DISCLOSE AND ELIMINATE JUROR PREJUDICE

The impanelling of a fair and impartial jury can best be achieved in this case if Plaintiffs are allowed to conduct through their own counsel probing voir dire on each prospective juror outside the presence of the other jurors. Simply put, a probing voir dire is often the key to securing a fair trial for a litigant, and it is absolutely necessary in cases in which the case issues touch deeply held juror prejudices. See Murphy v. Florida, 421 U.S. 794 (1975); Sheppard v. Maxwell, 384 U.S. 333 (1966); United States v. Dellinger, (7th Cir.1972) 472 F.2d 340.) Under such circumstances, it is not enough to simply ask a juror "broad questions at the outset about [his or her] impartiality." People v. Williams, 29 Cal.2d at 401. Although a juror may believe in good-faith that he or she can judge the case impartially, further interrogation may be necessary to reveal bias of which the juror is unaware. "[Q]uestions to which there is a 'right' and 'wrong'

answer may be less likely to reveal such bias than more open-ended questions." <u>People v. Crowe</u>, 8 Cal.3d 815,831 n. 31 (1973).

Since this case involves an alleged civil rights violation during the investigation of a supposed sex crime, it is imperative that the voir dire include questions that are non-leading and that prospective jurors be compelled to respond in a few sentences rather than a single word. Non-leading questions allow respondents to explain their opinions and in their own words, and thus penetrate stereotypes and the tendency to respond with answers that are socially acceptable. Non-leading questions will uncover underlying attitudes and prejudices which are unlikely to surface in perfunctory responses by jurors to standard closed-ended questions.

Finally it should be observed that voir dire which includes non-leading questions can take less time than most customary voir dire. A single open-ended question which allows a juror to utter a few sentences may go further to reveal actual attitudes than a lengthy and time-consuming string of leading questions which are neither informative nor dispositive.

## IV. ADDITIONAL PROCEDURES REQUESTED

### A. Introduction by the Court

As has already been noted, jurors will attempt to give responses that they believe the court wants to hear. It therefore is essential that the court inform the jurors clearly and repeatedly that the judge will not be displeased with any answer regardless of its content and that he is interested only in candid and complete answers. In other words, the court should emphasize to the jury that it is far more interested in candid truthful answers than in jurors going out of their way to present themselves as impartial and unbiased. This can be effectively communicated to the jurors by means of an introduction given prior to the actual commencement of the voir dire proceedings, the substance of which can then be repeated in abbreviated form at the beginning of

each juror's questioning. From time to time, it may be necessary for the judge to repeat that no one will condemn a juror for having feelings and opinions, and that the only thing the court and parties are interested in is to find out the nature of those feelings.

**B. Use of a Case-Specific Written Juror Questionnaire**

Plaintiff further requests that the Court agree to allow both parties to design a neutral, mutually-acceptable, case-specific questionnaire to be filled out by potential jurors prior to their voir dire. This questionnaire would seek to elicit additionally routine factual data and, in addition, focuses upon areas of prejudice unique to this case.

By requiring prospective jurors to fill out the questionnaire, the court can elicit a substantial amount of information without the problems inherent in group questioning before a large audience. This information can be digested by counsel prior to the actual voir dire questioning. Numerous time consuming and repetitive questions typically necessary in voir dire can almost be entirely eliminated. This promotes judicial economy and lessens the frustration experienced by the prospective jurors, counsel and the court during a lengthy voir dire.0020The most compelling reason for the utilization of a case-specific questionnaire in this case is the extremely sensitive issues involved and the potential for bias against Plaintiff, although Defendants could benefit from the questionnaire as well. The questionnaire will enable the jurors to address these sensitive issues in private without fear of embarrassment, thus yielding more accurate and case specific information. An agreed upon questionnaire can easily be prepared by the parties prior to jury selection.

**WHEREFORE** Plaintiff respectfully requests that the Court grant his requests regarding jury selection and voir dire, as detailed above, and for such further relief as the Court deems necessary and proper.

Respectfully submitted,
**MONTOYA LAW, INC.**

**(ELECTRONICALLY FILED)**

By:    _____

Dennis W. Montoya
Attorney for Danny Manzanares
P.O. Box 15235
Rio Rancho, NM   87174

(505) 246-8499
(505) 246-8599 (facsimile)

I certify that a true copy of the foregoing
Motion for Summary Judgment was mailed to
opposing counsel on August 17, 2006.

**(ELECTRONICALLY FILED)**

_____

Dennis W. Montoya