**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAY 29 2007

DANNY MANZANARES,

**MATTHEW J. DYKMAN**
**CLERK**

Plaintiff,

vs.                                                    CIV No. 05-0095 WPJ/LFG

SEAN HIGDON, an Officer of the
Albuquerque Police Department,
Individually,

Defendant.

### PLAINTIFF'S RENEWED MOTION FOR JUDGMENT PURSUANT TO RULE 50 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MEMORANDUM IN SUPPORT

Plaintiff **DANNY MANZANARES**, through his attorney, Dennis W. Montoya, MONTOYA LAW, INC., hereby renews his request that this Court enter into order granting his motion for summary judgment pursuant to Rule 50 of the Federal Rules of Civil Procedure. As grounds in support of this motion, Plaintiff states[1]:

### I. BACKGROUND

After two trials, the facts of this case are well-known by all. For the purposes of this Motion, it is only important to note that that the Plaintiff alleged three violations of his Fourth Amendment rights. First, Plaintiff alleged that Defendant violated his rights when Defendant refused to leave Plaintiff's home after Plaintiff revoked his consent for Defendant to be there. Second, Plaintiff alleged that Defendant's decision to handcuff him, in the absence of any evidence that Plaintiff became violent or posed a threat to the officer was unconstitutional. Finally, Defendant alleged that his prolonged arrest, while he was handcuffed in the back of

---

[1] In order to preserve this issue for appeal, Plaintiff is required to file this motion after the entry of judgment against him. This renewed Motion is filed for that purpose.

Defendant's police car, violated the rights and privileges afforded him. For the reasons set forth below, Plaintiff is entitled to judgment on each count notwithstanding the jury's decision to find against him.

## II. STANDARD

Federal Rule of Civil Procedure 50 requires a court to render judgment as a matter of law when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Thus, the court must review all of the evidence in the record, cf., e.g., Matsushita Elec. Industrial Co. vs. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1996), drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence, e.g., Lytle vs. Household Mfg., Inc., 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990). The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

## PLAINTIFF'S FIRST CLAIM – REFUSING TO LEAVE PLAINTIFF'S HOME

*I. Defendant Did Not Have any Lawful Reason to Remain in Plaintiff's Home after Plaintiff Asked Defendant to Leave.*

There is no dispute that the only reason Defendant could enter Plaintiff's home was that Plaintiff consented to that entry. Consent can justify an entry into a home, regardless of whether

there is probable cause. See <u>United States v. Sawyer</u>, 441 F.3d 890, 894 (10th Cir. 2006). However, consent is valid only if it is "freely and voluntarily given." <u>Id</u>. (internal quotation marks omitted). There is no dispute that the police entered Mr. Manzanares' home with his consent. There is also no dispute that during the course of this encounter, Mr. Manzanares withdrew his consent and asked that the Defendant and Officer Saladin leave his home. <u>Testimony of Defendant Higdon (March 12, 2007)</u>, pg. 36, lns. 1-4.

Shortly after Mr. Manzanares requested that the police leave his home he was placed in handcuffs. <u>Id</u>., pg. 37, lns. 3-4. When a seizure is based upon consent, it is the state's duty to demonstrate the validity of the consent. See <u>Florida v. Royer</u>, 460 U.S. 491, 499, 103 S.Ct. 1319 (1983)(plurality op.) Defendant did not leave Mr. Manzanares' home after he withdrew his consent for them to be there. Defendant cannot meet his burden and his actions were consequently unlawful. It is critically important to note that, even assuming *arguendo* that at the time Plaintiff told Defendant to leave his house, Defendant had the lawful right to detain or arrest Plaintiff, he could not do so **in Plaintiff's house**. See, *e.g.*, <u>United States v. Prescott</u>, 581 F.2d 1343, 1350 (9th Cir. 1978)(*joining* <u>Dorman v. United States</u>, 1970, 140 U.S.App.D.C. 313, 435 F.2d 385(en banc) *and* <u>United States v. Reed</u>, 572 F.2d 412 (1978)) in holding that, "absent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest."

Put simply, once Plaintiff revoked his consent for Defendant to remain in his home, Defendant had precisely two choices: 1) arrest Plaintiff and leave Plaintiff's home or 2) not arrest Plaintiff and leave his home. The option to **not** arrest Plaintiff and **not** leave his home was not available. Plaintiff is entitled to judgment as a matter of law on his claim against Defendant for remaining inside his home after consent was withdrawn.

## PLAINTIFF'S SECOND CLAIM – HANDCUFFING PLAINTIFF WHILE HE WAS IN HIS OWN HOME

*I. Defendant Did Not Have Any Lawful Reason to Handcuff Plaintiff Inside His Home After Plaintiff Asked Him to Leave – Even Under the Terry Standard.*

The Fourth Amendment requires only a "minimal level of objective justification" for making a Terry stop. INS v. Delgado, 466 U.S. 210, 217, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984). It requires considerably less than proof of wrongdoing by a preponderance of the evidence, but something more than an inchoate and unparticularized suspicion or hunch. Alabama v. White, 496 U.S. 325, 329-330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990)(internal quotation marks omitted)(*quoting* United States v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989))(*and quoting* Terry v. Ohio, 392 U.S. 1, 27, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1969)).

In handcuffing Mr. Manzanares, the evidence clearly and undisputedly shows, Defendant Higdon acted on nothing more than an unsubstantiated "hunch." There was no testimony in the case that indicated Mr. Manzanares was armed, violent, or that it was suspected that he recently committed a violent act. In fact, Defendant Higdon testified only that he had to place Mr. Manzanares in handcuffs because he became "agitated...." and to "keep the situation from becoming out of control." Higdon Testimony, pg. 37, lns. 8-9. Defendant Higdon then provided the following testimony on direct examination:

```
8  Q. He wasn't aggressive towards you physically, though, was
9  he?
10 A. Well, I felt the need to put him in handcuffs, so I mean,
11 I wouldn't have just put him in handcuffs for no reason.
12 Q. Okay. Did you have any articulable basis for believing
13 him to be armed and dangerous?
14 A. I was in somebody's house. I don't know anything about
15 this person or what weapons he may have accessible to him in
16 his own house.
```

Id.

This blanket, unfounded hunch is insufficient to justify handcuffing and restraining Plaintiff in his home, with handcuffs. Even for a "Terry Stop," evidence or testimony from the police that they had reason to believe a particular suspect had a gun or was violent or that the circumstances of this particular encounter warranted the unusual intrusiveness of handcuffing is required. In the absence of such evidence, the naked fact that, for example, drugs are suspected to be present will not provide a *per se* justification for use of guns and handcuffs in a *Terry* stop. See United States v. Stewart, 867 F.2d 581, 585-86 (10th Cir. 1989)(general observations about the conduct of drug dealers will not support exigent circumstances excusing police compliance with the knock-and-announce rule; police must articulate specific facts related to the premises to be searched or its occupants); *see also* United States v. Melendez-Garcia, 28 F.3d 1046, 1052-1053 (10th Cir. 1994)(executing a felony stop inappropriate when police outnumbered the defendants, executed the stop on an open highway during the day, had no tips or observations that the suspects were armed or violent, and the defendants had pulled their cars to a stop off the road and stepped out of their cars in full compliance with police orders). A seizure lacking any legal justification is a constitutional violation from its inception. See Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197 (10th Cir. 2006).

### PLAINTIFF'S THIRD CLAIM – PROLONGED ARREST, IN HANDCUFFS, IN POLICE CAR

*I. This Case Does Not Involve An "Investigative Detention." Plaintiff's Detention Was Not An "Investigatory Detention" Under The Prevailing Case Law, Because He Was Handcuffed And Locked In The Cage Of A Police Car. Instead, Defendant Placed Plaintiff Under Arrest.*

The Fourth Amendment gives every individual the right "to the possession and control of his own person, free from all restraint ... unless by clear and unquestionable authority of law."

Terry, 392 U.S. at 9 (internal quotations and citations omitted). The "central requirement" of the Fourth Amendment "is one of reasonableness." Illinois v. McArthur, 531 U.S. 326, 330 (2001) (quotations and citations omitted); see also Elkins v. United States, 364 U.S. 206, 222 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.") Therefore, in order for a seizure to be lawful under the Fourth Amendment, it must be reasonable.

There are two categories of police seizures under the Fourth Amendment: full arrests and less intrusive detentions (investigative stops). Unlike investigative stops, arrests are not constitutionally valid in the absence of probable cause. "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks omitted).

The rule that arrests must be supported by a warrant or probable cause is well established. See, e.g., Dunaway v. New York, 442 U.S. 200, 212, 99 S. Ct. 2248 (1979). The Tenth Circuit has determined that police officers are on notice that a seizure occurs within the meaning of that Amendment if at any point a person believes that he or she is not free to terminate an encounter with a police officer and that any seizure must at least be justified at its inception. Jones v. Hunt, 410 F.3d 1221, 1230 (10th Cir. 2005). The "free to leave" standard is clearly established. See Michigan v. Chesternut, 486 U.S. 567, 573, 108 S. Ct. 1975 (1988). It is not reasonable for law enforcement officers to seize a person absent probable cause, unless the seizure falls under one of the limited, well-defined exceptions to this rule. See Skinner v. Railway Labor Execs. Ass'n, 489 U.S. 602, 619-620 (1989).

An investigative detention is "a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause." See United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir.1996). An officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." Id. For an officer to have reasonable suspicion to seize an individual, the officer "must have a **particularized and objective basis for suspecting the particular person stopped** of criminal activity." Id.(emphasis added).

In this case, there was no testimony at trial that would indicate that Plaintiff was suspected of any crime—other than withholding evidence. In New Mexico, there is no such crime as resisting a police officer by withholding information. State v. Prince, 126 N.M. 547, 1999 NMCA 10, 972 P.2d 859 (Ct. App. 1998). Likewise, Plaintiff did not commit the offense of obstructing justice. An investigative detention may be violative of the Fourth Amendment absent probable cause where it approaches the conditions of an arrest. See Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319 (1983)(plurality op.) "A person is seized within the meaning of the Fourth Amendment when a reasonable person would believe that he or she is not free to leave." Roska v. Peterson, 328 F. 3d 1230, 1243 (10th Cir. 2003)(citing Graham v. Connor, 490 U.S. 386, 395 (1989); Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Florida v. Bostick, 501 U.S. 429, 435 (1991). Likewise, the detention of a potential witness to a crime must satisfy the Fourth Amendment's "reasonableness" requirement. See Illinois v. Lidster, 540 U.S. 419, 426-27, 124 S.Ct. 885 (2004).

Forcing someone to the back of a locked squad car in the middle of the night constitutes an arrest. See Cortez v. McCauley, 438 F.3d 980 (10th Cir. 2006). A warrantless arrest is

permissible when an officer "has probable cause to believe that a person committed a crime." Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). An arrest is distinguished from other police-citizen encounters, by the involuntary, "highly intrusive" nature of the encounter. Cortez v. McCauley, 478 F.3d 1108 (10th Cir. 2007). "[T]he use of firearms, handcuffs, and other forceful techniques" generally exceeds the scope of an investigative detention and enter the realm of an arrest. See United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994).

Although the use of handcuffs and firearms does not, in and of itself, convert an investigative detention into an arrest, United States v. Neff, the use of handcuffs is appropriate only as long as there is a reasonable, articulable ground for fearing danger from the suspects. 300 F.3d 1217, 1220-21 (10th Cir. 2002). Even if an investigative or Terry stop was justified—which Plaintiff does not concede—"handcuffing of the suspect is not ordinarily proper." 4 Wayne R. LaFave, Search and Seizure § 9.2(d) (3d ed. 1996)(internal quotations and citations omitted); See, e.g., United States v. Shareef, 100 F.3d 1491, 1506 (10th Cir. 1996); Terry v. Ohio, 392 U.S. 1 (1968). Because handcuffing was not appropriate for any encounter short of a lawful arrest, Defendant violated Plaintiff's constitutional rights by employing physical force under the circumstances. See Graham, 490 U.S. at 396; Baptiste, 147 F. 3d at 1256, n.7. "The law was and is unambiguous: a government official must have probable cause to arrest an individual." See Cortez, 438 F.3d at 990. There was no legal justification for Danny Manzanares's prolonged detention in this case.

## II. Walker v. City of Orem Does Not Affect This Case Because Walker Did Not Involve Physical Restraints, Including Handcuffing And Being Locked In A Patrol Vehicle's Cage

Initially, Plaintiff notes that were it not for the Court's determination that the law was not clearly established, *Walker* would render Defendant subject to a finding of liability despite his

claim that the detention of Plaintiff was merely an "investigative detention." See Walker v. City of Orem, 451 F.3d 1139, 1148(detaining witnesses for ninety-minutes was unconstitutional)(citing Cortez v. McCauley, 438 F.3d 980, 991-92 (10th Cir. 2006).

On the other hand, if Defendant's claim that the detention in this case were merely an "investigative detention," were true, *Walker* would likely be fatal to Plaintiff's detention claims. *Walker* held that the fact that detaining witnesses for ninety minutes was unconstitutional was not clearly established law in 1998. This case arose in 2002, but Plaintiff is not aware of substantial law between 1998 and the *Walker* decision sufficient to meet the "clearly established" standard. However, as described above, this case involves an arrest - not an "investigative detention." Thus, Defendant cannot rely on the Walker decision to claim that he is entitled to qualified immunity. Instead, he would have to demonstrate that the law did not make clear that arresting someone without probable cause to believe that the person had committed a crime was not clearly unconstitutional in 2002. As the above cited law makes clear, that is obviously not the case.

### III. There was No Probable Cause to Arrest Mr. Manzanares Based on His Refusal to Answer the Questions Posed to Him by Office Higdon

Defendant Higdon argued at the trial in this matter that Mr. Manzanares' refusal to provide him with Miguel "Rick" Maestas' name and address provided him with either reasonable suspicion and/or probable cause to detain him for obstructing an officer. For the reasons stated previously, the detention of Mr. Manzanares constituted an arrest, not a "detention." Higdon's argument fails for two reasons. First, nothing in the Constitution compels an individual to respond to questions posed to him by an officer, nor does the Constitution allow an officer to use the refusal to provide answers as a basis for a detention or search. Second, neither New Mexico

law nor Albuquerque city ordinance criminalizes the refusal to answer questions or the providing of answers that an individual knows to be false.

As Justice White noted in *Terry*:

> Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.

Terry, 392 U.S. at 34-35 (Justice White concurring)(Emphasis added).

"[I]f the person refuses to answer and the police take additional steps ... to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure." Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 216-217 (1984)(*citations omitted*). "[N]othing compels the motorist to answer such a question, when a motorist declines to answer it, the officer may draw clues from that declination that he or she should be more prudent and concerned about personal safety. The officer may not use the refusal to answer as the basis for a more intrusive search..." United States v. Holt, 264 F.3d 1215, 1224 (10th Cir. 2001).

Defendant Higdon also argues that Mr. Manzanares' refusal to answer questions posed to him and his initial denial of his knowledge regarding Mr. Maestas' last name constitute an offense under New Mexico law or Albuquerque ordinance. Defendant Higdon relies upon two criminal statutes and one City of Albuquerque ordinance to support the illegal arrest of Mr. Manzanares:

> 1) NMSA § 30-1-13 (1978)-Accessory: A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted, or has been convicted of a different crime or degree of crime, or has been acquitted, or is a child under the Children's Code [32A-1-1 NMSA 1978].
>
> 2) NMSA § 30-22-1 (1978)-Resisting, evading or obstructing an officer consists of: D. resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.
>
> 3) Albuquerque Ordinance § 12-2-19-Resisting, obstructing or refusing to obey an officer consists of either: (D) Interfering with, obstructing or opposing any officer in the lawful discharge of his regular and affixed duties.

Defendant Higdon's argument that Mr. Manzanares could be arrested for violation of § 30-1-13 is a non-starter. The plain language of the statute mandates that a person may be charged as an accessory to a crime only if he procures, counsels, aids or abets in its commission..." There is absolutely **no** testimony or other evidence to indicate that Mr. Manzanares was aware that Mr. Maestas had sex with the alleged victim, consensual or otherwise, until after the act had occurred.

With respect to the violation of NMSA § 30-22-1 and § 12-2-19, Mr. Manzanares did not violate either provision. As an initial point, since both the statute and ordinance in question are so similar in language, the same analysis applies to both. *See e.g.*, Rochester v. Rochester, 1998 NMCA 100, 17 (N.M. Ct. App. 1998), *citing* Century Bank v. Hymans, 120 N.M. 684, 690, 905 P.2d 722, 728 (Ct. App. 1995). "'Resisting, evading or obstructing an officer' primarily consists of physical acts of resistance." State v. Prince, 126 N.M. 547, 551 (N.M. Ct. App. 1998)(interpreting NMSA §30-22-1(D))(*citations omitted*.) To the extent that words only could

violate NMSA § 30-22-1(D), only words that could be considered "fighting words" are violative of this provision. Refusing to answer an officer's question is not a violation of New Mexico law.

**WHEREFORE**, Plaintiff respectfully requests that the Court deny Defendant qualified immunity and grant judgment in his favor on all counts of his Complaint. Plaintiff further requests such additional relief as the Court determines to be necessary and proper. In the alternative, Plaintiff requests that the Court vacate the jury's verdict and order a new trial.

                                                      Respectfully submitted,
                                                     **MONTOYA LAW, INC.**

                                                     /s/
                        By: _____
                                          Dennis W. Montoya
                                          Attorney for Danny Manzanares
                                          P.O. Box 15235
                                          Rio Rancho, NM   87174

                                          (505) 246-8499
                                          (505) 246-8599 (facsimile)

I certify that a true copy of the foregoing
Motion for Summary Judgment was delivered
to opposing counsel via the court's CM/ECF
delivery system.

/s/
_____
Dennis W. Montoya