FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 29 2007

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANNY MANZANARES,

    Plaintiff,

vs.                                    CIV No. 05-0095 WPJ/LFG

SEAN HIGDON, an Officer of the
Albuquerque Police Department,
Individually,

    Defendant.

## PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO RULE 59(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE BASED UPON ERRONEOUS JURY INSTRUCTIONS AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff **DANNY MANZANARES**, through his attorneys, Dennis W. Montoya, MONTOYA LAW, INC., and Arlon Stoker, hereby moves this Court for an order granting his motion for new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. As grounds in support of this motion, Plaintiff states:

## I. BACKGROUND

On March 13, 2007, both the Plaintiff and Defendant made motions for a directed verdict pursuant to Fed. R. Civ. P. 50. The Court informed the parties that he would take both motions under advisement and allow the case to proceed to the jury. On March 14, 2007, the jury returned a verdict for Defendant Higdon. On March 21, 2007, the Court entered an order, *sua sponte*, directing the parties to brief their respective motions for directed verdict. On the parties filed briefs in support of their motions for directed verdict. On May 7, 2007, the Court entered an order denying the Plaintiff's Motion and affirming the jury's verdict. Judgment for Defendant Higdon was subsequently filed on May 14, 2007.

This motion for new trial seeks an order granting a new trial for two reasons. First, a number of the jury instructions provided to the jury were not supported by the evidence and thus

were erroneous. Second, in the event that the Court denies Plaintiff's renewed Motion for Directed Verdict, the Plaintiff requests that the Court enter an order granting a new trial.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(a) allows a court to grant a new trial "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States..." "Where a jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction. Even if that possibility is 'very unlikely,' reversal is required." City of Wichita v. United States Gypsum Co., 72 F.3d 1491, 1495 (10th Cir. 1996), *citing* SEC v. Peters, 978 F.2d 1162, 1167 (10th Cir. 1992); *quoting* Adams-Arapahoe Joint School Dist. v. Continental Ins. Co., 891 F.2d 772, 780 (10th Cir. 1989).

Jury instructions are reviewed by the Tenth Circuit *de novo*, as a whole, to determine whether they correctly stated the law and properly guided the jury in its deliberations. *See* Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 793 (10th Cir. 2005). "[I]t is black letter law that it is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth..." Townsend v. Lumbermens Mut. Cas. Co., 294 F.3d 1232, 1238 (10th Cir. 2002)(*quotations omitted*). "This duty is not fulfilled by mere abstract statements or legal definitions, but rather by a fair and impartial statement of the factual issues and the law applicable thereto. The instructions ought to be stated in logical sequence and in the common speech of man if they are to serve their traditional and constitutional purpose in our system of jurisprudence." Id. It is presumed that the

jury followed the instructions as given. *See* Pittman v. Littlefield, 438 F.2d 659, 662 (1st Cir. 1971), *citing* Glidden v. Brown, 99 N.H. 323, 325, 110 A.2d 277, 279 (1954).

## ARGUMENT AND ANALYSIS

*I. Plaintiff preserved his objections to the erroneous jury instructions*

In Plaintiff's Objections to Jury Instructions, filed in open court on March 13, 2007, and in oral objections lodged, pgs. 275-288 of trial transcript, Plaintiff raised objections to a number of instructions, including the instructions which are the subject to the instant motion.

*II. The Court's Jury Instruction No. 28 (herein after "Accessory Instruction") was erroneous because there was no testimony provided that indicates that Mr. Manzanares was an accessory to any crime*

Defendant Higdon argue that Mr. Manzanares' refusal to answer questions posed to him and his initial denial of his knowledge regarding Mr. Maestas' last name constitute an offense under New Mexico law or Albuquerque ordinance. The Court provided the following instruction, requested by Defendant Higdon to the jury:

> 1) NMSA § 30-1-13 (1978)-Accessory: A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted, or has been convicted of a different crime or degree of crime, or has been acquitted, or is a child under the Children's Code [32A-1-1 NMSA 1978].

Defendant Higdon's argument that Mr. Manzanares could be arrested for violation of § 30-1-13 is a non-starter. The plain language of the statute mandates that a person may be charged as an accessory to a crime only if he procures, counsels, aids or abets in its commission..." There is absolutely **no** testimony or other evidence to indicate that Mr. Manzanares was aware that Mr.

Maestas had had sex with the alleged victim, consensual or otherwise, until after the act had occurred.

***III. The Court's Jury Instructions Nos. 7, 8, 9, 10 and 12 (herein after "Investigative Detention Instructions") were erroneous since the level of force and intrusion that characterized Mr. Manzanares detention surpassed the levels authorized for an Investigative Detention***

The Fourth Amendment gives every individual the right "to the possession and control of his own person, free from all restraint ... unless by clear and unquestionable authority of law." Terry, 392 U.S. at 9 (internal quotations and citations omitted). The "central requirement" of the Fourth Amendment "is one of reasonableness." Illinois v. McArthur, 531 U.S. 326, 330 (2001) (quotations and citations omitted); *see also* Elkins v. United States, 364 U.S. 206, 222 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.") Therefore, in order for a seizure to be lawful under the Fourth Amendment, it must be reasonable.

There are two categories of police seizures under the Fourth Amendment: full arrests and less intrusive detentions (investigative stops). Unlike investigative stops, arrests are not constitutionally valid in the absence of probable cause. "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks omitted). The question presented herein, is whether the detention of Mr. Manzanares by Defendant Higdon was invasive enough to constitute an arrest.

An investigative detention is "a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause." See United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir.1996). An officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." Id. For an officer to have reasonable suspicion to seize an individual, the officer "must have a **particularized and objective basis for suspecting the particular person stopped** of criminal activity." Id.(emphasis added).

The Fourth Amendment requires only a "minimal level of objective justification" for making a Terry stop. INS v. Delgado, 466 U.S. 210, 217, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984). It requires considerably less than proof of wrongdoing by a preponderance of the evidence, but something more than an inchoate and unparticularized suspicion or hunch. Alabama v. White, 496 U.S. 325, 329-330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990)(internal quotation marks omitted)(*quoting* United States v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989))(*and quoting* Terry v. Ohio, 392 U.S. 1, 27, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1969)). An investigative detention may be violative of the Fourth Amendment absent probable cause where it approaches the conditions of an arrest. See Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319 (1983)(plurality op.)

In handcuffing Mr. Manzanares, the evidence clearly and undisputedly shows, Defendant Higdon acted on nothing more than an unsubstantiated "hunch." There was no testimony in the case that indicated Mr. Manzanares was armed, violent, or that it was suspected that he recently committed a violent act. In fact, Defendant Higdon testified only that he had to place Mr. Manzanares in handcuffs because he became "agitated...." and to "keep the situation from

becoming out of control." Higdon Testimony, pg. 37, lns. 8-9. Defendant Higdon then provided the following testimony on direct examination:

> 8  Q. He wasn't aggressive towards you physically, though, was
> 9  he?
> 10 A. Well, I felt the need to put him in handcuffs, so I mean,
> 11 I wouldn't have just put him in handcuffs for no reason.
> 12 Q. Okay. Did you have any articulable basis for believing
> 13 him to be armed and dangerous?
> 14 A. I was in somebody's house. I don't know anything about
> 15 this person or what weapons he may have accessible to him in
> 16 his own house.

Id.

This blanket, unfounded hunch is insufficient to justify handcuffing and restraining Plaintiff in his home, with handcuffs. Even for a "Terry Stop," evidence or testimony from the police that they had reason to believe a particular suspect had a gun or was violent or that the circumstances of this particular encounter warranted the unusual intrusiveness of handcuffing is required. In the absence of such evidence, the naked fact that, for example, drugs are suspected to be present will not provide a *per se* justification for use of guns and handcuffs in a *Terry* stop. See United States v. Stewart, 867 F.2d 581, 585-86 (10th Cir. 1989)(general observations about the conduct of drug dealers will not support exigent circumstances excusing police compliance with the knock-and-announce rule; police must articulate specific facts related to the premises to be searched or its occupants); *see also* United States v. Melendez-Garcia, 28 F.3d 1046, 1052-1053 (10th Cir. 1994)(executing a felony stop inappropriate when police outnumbered the defendants, executed the stop on an open highway during the day, had no tips or observations that the suspects were armed or violent, and the defendants had pulled their cars to a stop off the road and stepped out of their cars in full compliance with police orders). A seizure lacking any

legal justification is a constitutional violation from its inception. See Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197 (10th Cir. 2006).

"A person is seized within the meaning of the Fourth Amendment when a reasonable person would believe that he or she is not free to leave." Roska v. Peterson, 328 F.3d 1230, 1243 (10th Cir. 2003)(citing Graham v. Connor, 490 U.S. 386, 395 (1989); Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Florida v. Bostick, 501 U.S. 429, 435 (1991).

Forcing someone to the back of a locked squad car in the middle of the night constitutes an arrest. See Cortez v. McCauley, 438 F.3d 980 (10th Cir. 2006). A warrantless arrest is permissible when an officer "has probable cause to believe that a person committed a crime." Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). An arrest is distinguished from other police-citizen encounters, by the involuntary, "highly intrusive" nature of the encounter. Cortez v. McCauley, 478 F.3d 1108 (10th Cir. 2007). "[T]he use of firearms, handcuffs, and other forceful techniques" generally exceeds the scope of an investigative detention and enter the realm of an arrest. See United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994).

Although the use of handcuffs and firearms does not, in and of itself, convert an investigative detention into an arrest, *United States v. Neff*, the use of handcuffs is appropriate only as long as there is a reasonable, articulable ground for fearing danger from the suspects. 300 F.3d 1217, 1220-21 (10th Cir. 2002). Even if an investigative or *Terry* stop was justified—which Plaintiff does not concede—"handcuffing of the suspect is not ordinarily proper." 4 Wayne R. LaFave, Search and Seizure § 9.2(d) (3d ed. 1996)(internal quotations and citations omitted); See, e.g., United States v. Shareef, 100 F.3d 1491, 1506 (10th Cir. 1996); Terry v. Ohio, 392 U.S. 1 (1968). Because handcuffing was not appropriate for any encounter short of a lawful arrest, Defendant violated Plaintiff's constitutional rights by employing physical force under the

circumstances. See Graham, 490 U.S. at 396; Baptiste, 147 F. 3d at 1256, n.7. "The law was and is unambiguous: a government official must have probable cause to arrest an individual." See Cortez, 438 F.3d at 990.

Since Mr. Manzanares' detention was an arrest. This encounter was highly intrusive, with the Defendant remaining in the Plaintiff's home despite his request that the Defendant leave. The use of handcuffs was not justified because there was no reasonable and objective belief that Mr. Manzanares was violent or posed a threat to the Defendant. In short, the detention of Mr. Manzanares, which began at the time Mr. Manzanares requested that the Defendant leave his home and where, in response, Defendant Higdon placed Mr. Manzanares in handcuffs, was an arrest. Therefore, the jury instructions relating to investigative detention were not warranted.

Even if the Court finds that the placing of handcuffs on Mr. Manzanares while he was in his home did not convert the investigative detention into an arrest, the investigative detention instruction was still unwarranted. Shortly after Sergeant Christine Chester, who testified by deposition, arrived at Mr. Manzanares' home, Mr. Manzanares was placed in handcuffs once again and placed in the back of Defendant Higdon's patrol vehicle, as known as the "cage." The law is clearly established that the transportation of an individual in the back of a police vehicle constitutes an arrest. See Centanni v. Eight Unknown Officers, 15 F.3d 587, 591-592 (6th Cir. 1994)("[T]he removal of a suspect from the scene of the stop generally marks the point at which the Fourth Amendment demands probable cause."); United States v. Sharpe, 470 U.S. 675, 692 n.2, 84 L. Ed. 2d 605, 105 S. Ct. 1568 (Marshall, J., concurring)("A stop can also be unduly intrusive if the individual is moved or asked to move more than a short distance . . ."); Florida v. Royer, 460 U.S. 491, 502-03, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983)(plurality opinion)(stop converted to arrest when officers moved detainee from concourse to small room during airport

stop); United States v. Martinez, 808 F.2d 1050, 1055 (5th Cir.)(stop converted to arrest when police transported passengers to station after finding drugs in car), cert. denied, 481 U.S. 1032, 95 L. Ed. 2d 533, 107 S. Ct. 1962 (1987). Even if this case law does not govern the Court's determination, this simple fact must: Mr. Manzanares was not free to leave once he was in Defendant Higdon's "cage." Mr. Manzanares was handcuffed. He was in the backseat of a patrol vehicle, which could only be opened from the outside. The windows were not rolled down and Mr. Manzanares was not free to exit the vehicle. Put succinctly, Mr. Manzanares was under arrest.

*III. The Court's Jury Instructions No. 29 and 30 (herein after "Obstruction Instructions") were unsupported by existing law since, even if when the evidence viewed in the light most favorable to the Defendant, Mr. Manzanares' conduct did not constitute a violation of New Mexico law or City of Albuquerque Ordinance*

With respect to the violation of NMSA § 30-22-1 and § 12-2-19, Mr. Manzanares did not violate either provision. As an initial point, since both the statute and ordinance in question are essentially identical, the same analysis applies to both. See e.g., Rochester v. Rochester, 1998 NMCA 100, 17 (N.M. Ct. App. 1998), citing Century Bank v. Hymans, 120 N.M. 684, 690, 905 P.2d 722, 728 (Ct. App. 1995). "'Resisting, evading or obstructing an officer' primarily consists of physical acts of resistance." State v. Prince, 126 N.M. 547, 551 (N.M. Ct. App. 1998)(interpreting NMSA §30-22-1(D))(*citations omitted.*) To the extent that words only could violate NMSA § 30-22-1(D), only words that could be considered "fighting words" are violative of this provision. Refusing to answer an officer's question is not a violation of New Mexico law.

*IV. Should the Court deny the Plaintiff's Renewed Motion for Directed Verdict, the Court should, at a minimum, order a new trial*

Even where there are insufficient grounds for granting a renewed motion for judgment as a matter of law, a motion for new trial may be granted where the verdict is against the great

weight of the evidence. See <u>Dudley v. Wal-Mart Stores</u>, 166 F.3d 1317, 1320 n. 3 (11th Cir. 1999). In this case, the evidence clearly, overwhelmingly, weighs against the Defendant. Despite a legal obligation to leave Mr. Manzanares' home when asked to do so, Defendant Higdon refused to do so. The only explanation provided for refusing to leave is a factually unsupported hunch, which even if it was believed would not have justified his conduct that Mr. Manzanares might have alerted his friend that the police were looking for him. The law does not allow police to invade an individual's home on the suspicion that conduct which **might** interfere with a police investigation **might** be committed. If the Court denies Plaintiff's Renewed Motion for Directed Verdict, Mr. Manzanares requests that a new trial be granted in order to prevent a miscarriage of justice.

**WHEREFORE**, Plaintiff respectfully requests that the Court vacate the jury's verdict, sustain his objections raised at trial and addressed in this Motion and order a new trial. For the reasons stated herein, the Plaintiff's Motion for New Trial should be granted. The jury was improperly instructed and the verdict ultimately reflected that error.

                                                             Respectfully submitted,
                                                             **MONTOYA LAW, INC.**

                                                             /s/
                        By:  _____
                                                             Dennis W. Montoya
                                                             Attorney for Danny Manzanares
                                                             P.O. Box 15235
                                                             Rio Rancho, NM  87174

                                                             (505) 246-8499
                                                            (505) 246-8599 (facsimile)

I certify that a true copy of the foregoing Motion for New Trial was filed and served upon opposing counsel electronically via the Court's electronic server on May 29, 2007.

/s/
_____
Dennis W. Montoya